BOLIN, Judge.
By way of this appeal, plaintiff is questioning the correctness of a judgment of the district court rejecting his demands for the nullification of several deeds affecting property in Franklin Parish, on the grounds of fraud and mental incapacity of the alleged vendor.
Our learned brother of the trial court assigned excellent written reasons for his judgment. Our study of this record convinces us he was correct in his analysis of the facts and the application of such facts to the appropriate law, and for this reason we herewith quote his opinion in full:
“This suit was filed by plaintiff, Andrew Brooks, in forma pauperis, on September 30, 1957, against the defendants, Mrs. Naomi Brooks Mills and Charles M. Mills, husband and wife, and Charles Kendall, W. M. Keyes and E. D. McMurry, attacking the validity of certain deeds. After the filing of the suit and joinder of issue by answer filed on behalf of defendants, the case was first fixed for trial for June 19, 1958. Prior to the trial date one of the principal defendants, Charles Kendall, died on May 22, 1958, and thereafter, by order signed by this Court on September 2, 1958, Mrs. Evelyn Russell Kendall, surviving widow in community of the said late Charles Kendall, and the three minor children of the marriage of decedent, Charles Kendall, and said Mrs. Evelyn Russell Kendall, namely, Charles Russell Kendall, Floyd Julian Kendall and Beverly Anne Kendall, were substituted as parties defendant in this cause in the stead of said Charles Kendall, deceased.
“Plaintiff attacks the validity of all the acts whereby real property owned by him was conveyed by him and by his transferees of title on the ground of mental incapacity on his part at the time of his execution of the deeds in question. The basis of plaintiff’s action is founded on Article 1789 of our [LSA-] Civil Code, reading as follows:
“ ‘Art. 1789: Incapacity of persons under temporary derangement.
“ ‘A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent.’
“The conveyances which plaintiff seeks to have decreed a nullity are described as follows:
“(1) Deed executed February 19, 1953, by plaintiff to Mrs. Naomi Brooks Mills, duly recorded in Book 84, page 505, of the Franklin Parish Conveyance Records, purporting to convey:
“All grantor’s right, title and interest in and to 55’ wide on Allsworth St. off West end of Lots 1 and 2, Block 5, Adams Addition to Winnsboro, Louisiana;
“(2) Deed executed March 5, 1953, by plaintiff to Mrs. Naomi Brooks Mills, duly recorded in Book 84, page *642 633, of the Franklin Parish Conveyance Records, purporting to convey:
“All grantor’s right, title and interest in and to Lot 3, Block 5, Adams Addition to Winnsboro, Louisiana;
“(3) Deed executed April 28, 1953, by Mrs. Naomi Brooks Mills to Charles M. Mills and plaintiff to Charles Kendall, duly recorded in Book 85, page 309, of the Franklin Parish Conveyance Records, purporting to convey:
“Lot 3, Block 5, Adams Addition to Winnsboro, Louisiana;
“(4) Deed executed May 21, 1955, by Mrs. Naomi Brooks Mills, Charles M. Mills and plaintiff to Charles Kendall, duly recorded in Book 92, page 575, of the Franklin Parish Conveyance Records, purporting to convey:
“A lot 55 feet wide on Prairie St. (Alsworth St.) off West end of Lots 1 and 2, Block 5, Adams Addition to Winnsboro, Louisiana;
“(5) Deed executed September 3, 1955, by Charles Kendall to E. D. Mc-Murray, duly recorded in Book 93, page 559 of the Franklin Parish Conveyance Records, purporting to convey :
“Lot 3, Block 5, Adams Addition to Winnsboro, Louisiana, less and except the West 55 feet thereof previously sold;
insofar as said above described deeds purport to cover and affect plaintiff’s interest in the property described therein.
“Plaintiff was, prior to the execution of the first of the above described deeds, the owner of a one-half community interest in all of the property involved in said transactions and was the usufructuary of the other one-half interest in said property. The property described in the deeds referred to in items (1), (4) and (5), above, was known as the ‘hotel property’, and the property described in the deeds referred to in items (2), (3) and (6), above, was known as the ‘Cafe property’. Both of these properties were acquired by plaintiff during the lifetime of his wife, Mary Brooks, nee Stanley, and were thus community of that marriage. In 1948, Mrs. Brooks died, leaving as her sole heirs two children born issue of her marriage to plaintiff, namely, Mrs. Naomi Brooks Mills, one of the defendants herein, and Mrs. Onie Brooks Porter, who died in or about the year 1957. Before Mrs. Naomi Brooks Mills acquired any interest in the said property from plaintiff, her father, she had bought the interest of her sister, Mrs. Onie Brooks Porter, in the said property, and therefore owned a one-half .interest in the said property subject to plaintiff’s usu-fructuary rights thereon at the time of the transactions between plaintiff and Mrs. Naomi Brooks Mills.
“On September 6, 1952, plaintiff was severly injured in an automobile accident in Monroe, Louisiana. He was taken to the St. Francis Hospital in said city immediately after the accident where it was determined that he had sustained a fracture of his skull and an injury to his brain. Plaintiff remained in said hospital until October 23, 1952, at which time he was discharged. Plaintiff then returned to Winnsboro and stayed in his hotel or rooming house in the care of his daughter, Mrs. Naomi Brooks Mills, one of the defendants herein. For a considerable time following plaintiff’s return to Winnsboro from the hospital in Monroe he was attended by practical nurses engaged for that purpose by Mrs. Naomi Brooks Mills or by her husband, Charles M. Mills.
“Plaintiff takes the position that at the time of his execution of the deeds of February 19, 1953, March 5, 1953, April 28, 1953, and May 21, 1955, he was mentally deranged and bereft of his normal mental faculties and that, therefore, the said deeds are void for lack of legal consent on his part.
“Plaintiff further contends that he was induced to execute the said deeds by his *643 daughter and her husband, Mrs. Naomi Brooks Mills and Charles M. Mills, under such circumstances as to constitute a legal imposition of fraud upon him, due to the close relationship between father and daughter, and because of the deranged state of his intellect.
“The transferees of Charles Kendall are made parties defendant by plaintiff, and their subsequent deeds of acquisition sought to be decreed null and void by virtue of the alleged nullity of the deeds executed by plaintiff for the reasons above set out, such nullity prevailing for reasons that were apparent and of general knowledge in the community.
“Defendants deny any of the allegations of plaintiff that he was deranged mentally at the time of his execution of the deeds in question, or that he was unduly influenced or coerced in any manner by his daughter, Mrs. Naomi Brooks Mills, or by her husband, Charles M. Mills, or by any other person. They further allege that the deeds sought to be annulled by plaintiff are good and valid deeds, and those signed by plaintiff were signed by him at a time when he was mentally alert and physically fit; that no fraud was used by any of the defendants; and that plaintiff was not suffering from a mental condition which would render him incapable at the time of his execution of any of the deeds referred to. Defendants further allege that plaintiff was not notoriously insane and has never been so known in the community. In the alternative, in the event the deeds in question should be held to be null and void, the several defendants, respectively, request judgment against plaintiff for the amount expended by them in connection with the transactions in question.
“On the issues, as pitched, this cause was tried on October 22-24, 1958, but left open for depositions of witnesses in New Orleans, which depositions were filed on May 22, 1959, and with time thereafter for counsel in the case to file briefs with the Court, without a written Note of Evidence.
“At this point this Court wishes to state that each ‘Soundscriber record’ made in the case has been replayed and attentively listened to; that the depositions of Drs. Richard M. Paddison, Richard H. Corales and Thomas M. Richards, filed on May 22, 1959, have been carefully studied; that the exhibites filed in evidence have been carefully examined; and that the briefs of counsel have been thoroughly considered.
“It is quite apparent that after plaintiff returned to Winnsboro from the St. Francis Hospital on October 23, 1952, and thereafter he and his daughter, Mrs. Naomi Brooks Mills, and his son-in-law, Charles M. Mills, were in a rather precarious financial condition. In fact, their situation was such that all property involved in the transaction in question could have been lost by foreclosure of mortgages or execution of judgments without the realization of any amount by plaintiff or his said daughter. Therefore, under the circumstances, it was logical for plaintiff and his daughter, Mrs Naomi Brooks Mills, to use every possible effort to salvage something from the said property, even to a sale thereof if necessary.
“The mental capacity of plaintiff at the time of his execution of the deeds in question must by determined for a proper disposition of the issues involved in this litigation. Dr. Fred Sartor, plaintiff’s doctor, testified that as a result of the accident of September 6, 1952, plaintiff had a serious closed head injury and other complications; that the brain was injured in the confines of the skull, but that it would be speculation on his part as to the exact mechanism present; and that plaintiff had a skull fracture. Dr. Sartor expressed the opinion that plaintiff’s injury was such as to affect his brain, but on cross-examination admitted that he could not see the type of injury to plaintiff’s brain and conceded that plaintiff could have reverted to normal and not have had any permanent brain damage. Dr. Sartor further stated that a full recovery would be unexpected, but admitted that he could not say there was impairment to that *644 part of plaintiff’s brain which controls his ability to think and handle his business affairs. Dr. Sartor also testified that plaintiff’s recovery was miraculous and frankly admitted that he did not know what plaintiff’s mental condition was at the time of his execution of the deeds in question. The record reflects that Dr. Sartor’s specialty is 'general surgery’.
“The substance of the testimony of Dr. Hollis T. Rogers, a general practitioner of Winnsboro and formerly assistant coroner, was that he treated plaintiff for certain infections, etc, after he was involved in the accident of September 6, 1952, but that his treatments had no connection with any injury sustained by plaintiff in said accident. He admitted that Charles M. Mills and Mrs. Naomi Brooks Mills talked with him once with reference to the propriety of interdicting plaintiff, but stated that he refused to agree to interdiction as he was not convinced that plaintiff was mentally incompetent. (Dr. Rogers was a witness on behalf of plaintiff).
“Dr. Henry Jones, a general practitioner and coroner of Franklin Parish in and prior to January, 1953, testified that he saw Mrs. Naomi Brooks Mills, Charles M. Mills and plaintiff about his opinion as to the ability of plaintiff to execute a power of attorney. He stated that at that 'time he considered plaintiff to be the mental equal of the average 70 year old man. (Dr. Jones was a witness on behalf of defendants).
“Dr. Richard M. Paddison, a specialist in neurology and psychiatry, of New Orleans, a witness on behalf of plaintiff testified in substance that he saw plaintiff one time on January 8, 1958, for about one and one-half hours. He expressed the opinion that plaintiff's total brain function is below what it had previously been and that plaintiff’s judgment was poor and that he could be persuaded and coerced, in all likelihood, to sign documents or to perhaps do acts that he might not have done previously. He further expressed the opinion that plaintiff would not have the mental capacity to understand and execute real estate transactions involving his property on the dates of his execution of the deeds in question, but on cross-examination he admitted that he was not sure of plaintiff’s ability or lack of ability at the time of the transactions in question. He further qualified his expressed opinion with the following: 'All I can say, is that in January of 1958 that I didn’t feel that he (plaintiff) was completely competent.’ He further qualified his testimony by stating that he was unable to determine the severity of plaintiff’s brain condition and admitted that it was an impossibility for him to determine how much brain damage plaintiff had on certain days and dates. Dr. Paddison further testified that he felt that a more accurate assessment of plaintiff’s competence might be obtained from a social service contact in his community, with particular reference to plaintiff’s actions and daily activities.
“Dr. Richard H. Corales, a specialist in neurological surgery, of New Orleans, a witness on behalf of plaintiff, testified that he had seen plaintiff only once on September 7, 1952, at the request of Dr. Fred Sartor. He further stated that at that time plaintiff manifested a severe brain injury and that it was quite possible that plaintiff would be left with residual from the injury sustained by him. Dr. Corales only made one evaluation of plaintiff and that was done on September 7, 1952, as heretofore mentioned. Dr. Corales, however, would not state that plaintiff suffered from any ‘residual intellect impairment’.
“Dr. Thomas W. Richards, a psychologist, of New Orleans, a witness on behalf of plaintiff, testified that he had seen plaintiff for one hour on January 8, 1958. He considered plaintiff to be somewhat below the average for his age, but not markedly defective, and called him a ‘dull normal’. Dr. Richards considered plaintiff to be superior to at least 25% of the people of his age level and stated that the tests made by him did not show that plaintiff was incompetent in 1953, 1954 or 1955. He further *645 expressed the opinion that plaintiff was not a mentally deficient person.
“The following lay witnesses, on behalf of plaintiff, by their testimony indicate that they observed peculiar conduct on the part of plaintiff at some time following his return to Winnsboro from the St. Francis Hospital, namely:
Clover Wiggins
J. R. Kiper
George Ferrington
J. O. Neal
Irene Brown
Joe Black
W. A. Hatton
Jesse Hodges
H. H. Hammonds
Lee Black
Mrs. O. J. Stephens
“The testimony of the following lay witnesses on behalf on defendants establishes that plaintiff was mentally competent at the time he executed the deeds in question, or at least during the times he was in their presence, to-wit:
Mrs. Sidney Brooks
Thomas E. Williamson
Walter Huff
C. J. Remore
Edgar Vines
J. R. Donnell
John B. Snyder
Mrs. Alma Bradley
Sidney Brooks
Mrs. Bessie Thornhill
Edward Eugene Meredith
Woodrow Wilson
Jack Vines
Harold Robinson
David Carter
Ed Sullivan
Mrs. W. A. Hatton
Elmer Wiggins
Hiram B. Waller
“It is significant that one of the above named witnesses, Walter Huff, was the Notary Public who passed the Power of Attorney which was executed by plaintiff on January 23, 1953, to and in favor of Charles M. Mills. This witness was confident that plaintiff was mentally competent at that time. The said Power of Attorney is marked ‘P-12’ for identification.
“The witness, J. R. Donnell, is the Clerk of the Fifth Judicial District Court in and for the Parish of Franklin, State of Louisiana, and Ex-Officio a Notary Public. He is the official who passed the deed (P-6) from plaintiff to Mrs. Naomi Brooks Mills on February 19, 1953, the deed from plaintiff to Mrs. Naomi Brooks Mills (P-7) on March 5, 1953, the deed from Mrs. Naomi Brooks Mills and her husband, Charles M. Mills, and plaintiff to Charles Kendall on April 28, 1953 (P-8), the deed from Mrs. Naomi Brooks Mills and her husband, Charles M. Mills, and plaintiff to Charles Kendall (P-9) on May 21, 1955, and a Revocation of the Power of Attorney granted by plaintiff to Charles M. Mills, herein-above referred to as P-12, which said act of revocation was executed by plaintiff on August 26, 1953, and is marked P-13. Mr. Connell testified that plaintiff was present in his office in connection with each of said transactions and well understood and knew what he was doing in each instance.
“Without further elaborating on the testimony of the various witnesses, including that of plaintiff, Andrew Brooks, and that of parties defendant, Mrs. Naomi Brooks Mills, Charles M. Mills, W. M. Keyes, Mrs. Evelyn Russell Kendall, and E. D. McMur-ray, this Court is convinced that a preponderance of the evidence establishes that plaintiff was mentally competent and capable at the time of his execution of the several acts of sale in question and was not subjected to any coercion or imposition amounting to fraud by Mrs. Naomi Brooks Mills, the late Charles Kendall, or any other person. Therefore, under these circumstances, this Court must hold that the deeds in question must be recognized as good and valid deeds.
*646 “It is, therefore, the conclusion of this Court that:
“There should be judgment herein in fav- or of the defendants, Mrs. Naomi Brooks Mills, Charles M. Mills, Mrs. Evelyn Russell Kendall, as the surviving widow in community of Charles Kendall, deceased and as Natural Tutrix of the minor children, Charles Russell Kendall, Floyd Julian Kendall and Beverly Anne Kendall, issue of the marriage of said Mrs. Evelyn Russell Kendall with the said late Charles Kendall, and W. M. Keyes and E. D. McMurray, and against the plaintiff, Andrew Brooks, rejecting the demands of said plaintiff, at his cost.”
The cases are too numerous to require citation holding that judgments of trial courts based purely upon questions of facts are entitled to great weight and will not be set aside unless manifestly erroneous. As such a rule affects a decision based largely upon the credibility of the witnesses, this principle is perhaps more firmly rooted in our jurisprudence than in any other area. This is because the trier of facts sees and hears the witnesses while we do not have this opportunity. In this respect the trial judge enjoys a distinct advantage over us. While we must form our opinions from the reading of a cold record, he is able to fortify his conclusions by observing the manner and demeanor of the witnesses while in his presence and, while they are also, in most cases, confronted by the litigants. In such cases, where the evidence is conflicting, and we are not able to ferret out the truth with any degree of certainty, we feel it is much better to accept the trial judge’s version of such facts.
We feel this case is a classic example for the proper application of the above rule. Obviously all of the witnesses who testified in making up this voluminous record cannot be telling the truth. It is apparent from the written reasons of the learned trial judge that he was attentive to the testimony of each and every witness. As there is no dispute over the law and, as we find no manifest error in the findings of fact, the judgment appealed from is affirmed, at the cost of plaintiff-appellant.
Affirmed.